**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

| | |
|---|---|
| RIA R SQUARED, INC., | Case No. 26-19251-CLC |
| Debtor. | Chapter 11 |
| ______________________________________/ | |
| RIA R SQUARED, INC., | Adv. No. 26-[ ][1]-CLC |
| Plaintiff. | |
| vs. | |
| SHINHAN SECURITIES CO., LTD., | |
| Defendant. | |
| ______________________________________/ | |

# **SHINHAN'S MOTION FOR REMAND**

Shinhan Securities Co., Ltd. ("**Shinhan**"), by and through its undersigned counsel, respectfully moves this Court, pursuant to 28 U.S.C. §§ 1334(c)(1), 1334(c)(2), and 1452(b), for an order remanding the removed action captioned *Ria R Squared, Inc. v. Shinhan Securities Co., Ltd.*, Index No. 659538/2024 (N.Y. Sup. Ct.) (the "**State Court Action**") to the Supreme Court of the State of New York, County of New York, Commercial Division (the "**New York State Court**"), on the grounds that the United States Bankruptcy Court for the Southern District of Florida (this "**Court**") lacks subject-matter jurisdiction under 28 U.S.C. § 1334 or, in the

[1] As of the date of this Motion, the United States Bankruptcy Court for the Southern District of Florida, Miami Division has not yet opened an adversary proceeding for the State Court Action which was transferred from the United States District Court for the Southern District of New York to the United States District Court for the Southern District of Florida, Miami Division pursuant to Case No. 26-cv-6748. Ex. 48 [S.D.N.Y. Dkt. No. 12].

alternative, that mandatory abstention under 28 U.S.C. § 1334(c)(2) or permissive abstention and equitable remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b) require remand. In support of this motion (the "**Motion**"), Shinhan states as follows.

## PRELIMINARY STATEMENT

1. This Court should return the State Court Action to the forum where it belongs. The New York State Court has presided over this simple New York law-governed contract, conversion, and fraud dispute for nearly two years. The New York State Court has developed substantial familiarity with its facts, having issued at least 17 orders addressing, among other things, discovery disputes, motions to dismiss, injunctive relief, and case management. Discovery is largely complete, with approximately 45,000 documents having been produced by the parties, depositions were scheduled, experts are ready to be disclosed, and a trial-readiness conference was set for October 2026. All of this screeched to a halt because RIA R Squared, Inc. ("**RIA**") filed this Chapter 11 Case to avoid pending adverse rulings in the New York State Court. Specifically, the Chapter 11 Case was filed after: (1) RIA's "secretive and stealth" transfer of Shinhan's collateral was revealed, (2) the Court granted partial injunctive relief, including the payment of past and future borrowing rate and coupon payments, (3) compelled discovery revealed that RIA made material misrepresentations to the Court and Shinhan; (4) RIA's counsel withdrew from further representing RIA; and (5) Shinhan filed a motion for sanctions which was pending ruling. In a clear attempt to find a more favorable forum, RIA removed the State Court Action to this Court on the theory that it is "related to" RIA's bankruptcy case within the meaning of 28 U.S.C. § 1334(b). This Court should not tolerate RIA's attempts at manipulation of jurisdiction here.

2. All three prongs of a remand analysis weigh in favor of sending the State Court Action back to New York State Court. *First*, this Court lacks subject-matter jurisdiction over the

removed action. The premise of RIA's asserted "related to" jurisdiction is that the outcome of the State Court Action could affect RIA's bankruptcy estate. But, at the center of the parties' dispute is the ownership and value of cash RIA was ordered to (and agreed) pay to Shinhan for borrowing rate and coupon payments,[2] and limited remaining securities (the "**Shinhan Securities**") which RIA admits serves as Shinhan's collateral under the Agreements. RIA has further revealed it (fraudulently) transferred the Shinhan Securities out of the Debtor's estate to non-Debtor, Ducenta 80-20 Fund, LP. RIA cannot manufacture bankruptcy jurisdiction over a dispute concerning assets it has disclaimed any ownership interest in.

3. *Second*, even if this Court concludes that subject matter jurisdiction exists over the State Court Action, mandatory abstention under 28 U.S.C. § 1334(c)(2) independently requires remand. Every element is satisfied: there is no independent basis for federal jurisdiction other than 28 U.S.C. § 1334(b); the State Court Action asserts New York law-governed contract, conversion, and fraud claims with no bankruptcy-related questions; it was commenced in state court nearly two years before the Chapter 11 Case was filed; and it can be timely adjudicated in the New York State Court, which has already brought the case to the threshold of trial.

4. *Third*, even if mandatory abstention did not independently compel remand, permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) favor the same result. The core of RIA's issues is a two-party contractual dispute between RIA and Shinhan, the holder of approximately 98% of RIA's disputed unsecured claims. The New York State Court's extensive investment in the case, the predominance of New York law issues,

---

[2] *See* Ex. 1 (Decision and Order on Mot. for OSC); Ex. 2 (June 17, 2026 Hr'g Tr.) at 38:10–23 (the court ordering the payment of outstanding coupon and borrowing rate payments to Shinhan "whether it's directly to [Shinhan] in U.S. bank account, whether it's in an escrow account with or without the Court" and further holding that "[s]uffice to say, that RIA will resume making those payments to Shinhan as it is legally bound to do. That fact is not in dispute.").

and the absence of any genuine bankruptcy issues and multi-creditor bankruptcy administration all counsel strongly in favor of returning this dispute to the forum RIA itself selected in December 2024 and litigated for nearly two years before deciding to switch venues to avoid adverse rulings. Moreover, the Chapter 11 Case was filed in bad faith—there is no operating business and no assets to reorganize; RIA does not exist without Shinhan.

5. At core, this is a two-party dispute that started two years ago in New York State Court and it should be finished there. This Court should not exercise jurisdiction over—much less retain—a two-party New York contract dispute that has no legitimate connection to the administration of RIA's estate.

## BACKGROUND[3]

### I. THE PARTIES AND THE SECURITIES LENDING AGREEMENTS

6. Shinhan is a securities brokerage and investment banking firm organized under the laws of the Republic of Korea and a wholly owned subsidiary of Shinhan Financial Group, one of South Korea's largest financial institutions.

7. RIA is a Delaware corporation that purports to be a financial services and asset management company. In its state-court pleadings, RIA repeatedly represented that its principal place of business is New York.[4] As recently as April 2026, RIA represented its principal place of business was Los Angeles.[5] Only for purposes of this bankruptcy has RIA now represented that its principal place of business is Florida.[6]

8. On January 25, 2019, Shinhan and RIA entered into the GMSLA and a

---

[3] References to filings in this adversary proceeding are cited as "Dkt. No. _." References to filings in the related Chapter 11 case, *In re RIA R Squared, Inc.*, Case No. 26-19251-CLC (Bankr. S.D. Fla. 2026) (the "**Main Case**"), are cited as "Main Case Dkt. No. __.".

[4] *See e.g.*, Ex. 3 (RIA New York State Court Complaint ("**Compl.**")) ¶ 14.

[5] *See* Ex. 4 (RIA Mot. to Dismiss Shinhan's Answer & Countercl.) at 16.

[6] *See* Main Case Dkt. No. 1 (Ch. 11 Petition) at 1; *see also* Dkt. No. 1 (Adv. Compl.) ¶ 23.

Supplemental Lending Agreement (the "**SLA**" and, together with the GMSLA, the "**Agreements**").[7] Under the Agreements, Shinhan lent securities to RIA between February and October 2019, of which approximately $228 million (in face value) remains outstanding.[8] In exchange, RIA was required to deposit custodial securities totaling at least 110% of the value of the lent securities into custodial accounts for Shinhan's exclusive benefit and maintain the 110% value on a daily basis.[9]

9. RIA was also required to make monthly borrowing rate and quarterly coupon payments for as long as the loans remained outstanding.[10] A failure to make such payments within five business days of the scheduled payment date triggered an automatic Event of Default under Section 13 of the SLA.[11]

10. An Act of Insolvency was also an immediate Early Termination Event triggering an Event of Default and all rights and remedies under the GMSLA and Section 13 of the SLA.[12]

11. RIA unequivocally represented in writing, at the time the Agreements were executed, that "in the event of RIA's bankruptcy, Shinhan Investment Corp. will take over ownership of the custodial account containing the collateral without any issues."[13]

12. The Agreements further provide that "neither Party may claim any sum by way of consequential loss or damage in the event of failure by the other Party to perform any of its

---

[7] Ex. 5 (the Agreements).

[8] *See* Ex. 6 (Shinhan New York State Court Answer & Counterclaims ("**Countercl.**")) ¶ 176; Ex. 7 (Trade Confirmations).

[9] *See* Ex. 5 (the Agreements) at SLA § 9; Ex. 7 (Trade Confirmations); Ex. 2 (June 17, 2026 Hr'g Tr.) at 28:21–25.

[10] Ex. 5 (the Agreements) at GMSLA § 8.3; *id.* at SLA § 7.

[11] *See id.* at SLA §§ 7, 13.

[12] *See id.* at SLA § 13.

[13] Ex. 8 (RIA-Shinhan Correspondence, dated Jan. 2019).

obligations under this Agreement."[14]

## II. RIA DEFAULTED AND THE STATE COURT ACTION WAS FILED

13. Prior to the New York litigation, Shinhan had ownership of the Shinhan Securities serving as its collateral. Under Sections 2.3, 4.2(c), and 14(c) of the GMSLA, RIA transferred full legal title and ownership to Shinhan.[15] Moreover, when RIA failed to make a timely borrowing rate payment in October 2024, Shinhan exercised its irrevocable power of attorney to take ownership of the custodial accounts including all custodial securities held therein, which as of October 2024 was comprised of liquid, marketable securities valued at approximately $224 million market value.[16] RIA obstructed those efforts.

14. On December 9, 2024, shortly after Shinhan exercised the power of attorney, RIA commenced the State Court Action.[17] It sued Shinhan for breach of contract, fraudulent inducement, breach of the covenant of good faith and fair dealing, and declaratory judgment, framing its own alleged breaches as arising from a purported oral side agreement it contends Shinhan failed to honor.[18] No such oral agreement exists, however. Nor does any such oral agreement constitute an Event of Default under the Agreements.[19]

15. Discovery commenced immediately, as the New York State Court had expressly ordered there would be "no stay of discovery pending motion practice, settlement proceedings, or alternative dispute resolution, unless specifically ordered by the Court."[20]

---

[14] Ex. 5 (the Agreements) at GMSLA § 10.4.

[15] Ex. 5 (the Agreements).

[16] Ex. 6 (Countercl.) ¶¶ 184–192; Ex. 9 (Oct. 24, 2024 Collateral Report).

[17] Ex. 3 (Compl.).

[18] *See* Ex. 3 (Compl.) ¶¶ 75–112. The claims for declaratory judgment and breach of good faith and fair dealing were dismissed on July 31, 2025. Ex. 10 (Decision and Order on Mot. to Dismiss).

[19] An Event of Default would have required a valid and binding securities lending agreement with specific terms, RIA to have provided collateral, and RIA to have provided written notice of Event of Default and termination of the loans. None occurred.

[20] *See* Ex. 11 (March 13, 2025 Prelim. Conf. Order).

16. On September 2, 2025, Shinhan asserted counterclaims for breach of contract, conversion, and unjust enrichment based on RIA's continued withholding of the lent securities and its improper conversion of the Shinhan Securities.[21]

17. Pursuant to the Court-ordered deadline, the parties completed all document discovery by September 26, 2025, subject to limited discovery disputes.

18. In May 2025, notwithstanding its prior representations in its Complaint that it would continue all payments while the loans remained outstanding, RIA abruptly ceased providing daily BNP-verified reports on the value of Shinhan's collateral, stopped making monthly borrowing rate payments, and discontinued quarterly coupon payments.[22] As a result, Shinhan sent a letter to BNP, again exercising its irrevocable power of attorney over the custodial accounts, but RIA once again obstructed Shinhan's efforts by falsely alleging it had made all payments and directing BNP to disregard all instructions from Shinhan.[23]

19. Shinhan served renewed discovery requests seeking information regarding the status of the collateral, but RIA refused to produce any such information.[24] Shinhan therefore advised that it would seek the intervention of the New York State Court to protect its collateral and its rights, including through injunctive relief and a motion to compel.[25] In response, RIA represented that it wished to negotiate a settlement.

20. In October 2025, the parties engaged in settlement negotiations.[26] In January 2026, the parties executed a non-binding term sheet, and on January 21, 2026, the New York State Court

---

[21] *See* Ex. 6 (Countercl.).

[22] Ex. 6 (Countercl.) ¶¶ 194, 196; Ex. 12 (Correspondence with BNP) at 2, 11, 14.

[23] Ex. 6 (Countercl.) ¶ 195; Ex. 12 (Correspondence with BNP) at 10, 13.

[24] *See* Ex. 13 (Feb. 25, 2026 Status Conf. Tr.) at 5:7–18.

[25] *See* Ex. 13 (Feb. 25, 2026 Status Conf. Tr.) at 5:7–18.

[26] *See* Ex. 14 (Jan. 21, 2026 Stipulation and Order) at 1.

entered a stipulated order formally staying the action for 30 days, until February 20, 2026, to allow the parties to paper a final settlement.[27] The New York State Court granted the stay while expressly reserving Shinhan's right to seek injunctive relief with respect to the collateral and without prejudice to any motion to compel.[28] The New York State Court further directed that if a stipulation of discontinuance was not filed by March 27, 2026, the parties were to file any anticipated motions to compel and motions to dismiss by April 13, 2026, along with a joint proposed amended preliminary conference order.[29]

21. However, RIA did not negotiate in good faith—while the stay was in place, it continued to withhold collateral reports and the required payments and, as subsequent discovery would later confirm, began systematically selling, transferring, and otherwise depleting the Shinhan Securities, all while representing a settlement was forthcoming.[30] Although Shinhan had sent draft settlement agreements to RIA weeks before the February 25 status conference, RIA never returned a single comment on the draft agreements, never made a counterproposal, and never engaged substantively in the settlement process—despite repeatedly assuring Shinhan's counsel that a markup was forthcoming.[31]

22. At the February 25, 2026, status conference, RIA requested an additional 30 day extension to finalize the settlement—a court representation now known to be entirely false.[32] The New York State Court granted RIA's request for an additional thirty days to conclude the

---

27 *See id*. at 2.

28 *See* Ex. 13 (Feb. 25, 2026 Status Conference Tr.) at 10:13–17.

29 *See* Ex. 15 (Feb. 25, 2026 Court Notice).

30 *See infra* ¶ 28.

31 *See* Ex. 16 (May 12, 2026 Hr'g Tr.) at 15:11–16:12.

32 RIA provided not a single markup to the settlement agreements. It also had no ability or intent to settle, as confirmed by David Kang's (RIA's CEO) email to its auditor, Grant Thornton, roughly one week after seeking the extension, in which RIA's controller advised Grant Thornton that "[r]egarding the Shinhan lawsuit, there have been no developments since our last update. No settlement is imminent." *See* Ex. 17 (Feb.–Mar. 2026 GT Correspondence), Email from S. Shida to A. Klint (Mar. 3, 2026).

settlement agreements without prejudice to Shinhan's right to its collateral, on the condition that, absent a stipulation of discontinuance, the parties would have fifteen days to file their respective motions to compel and (as to RIA) a motion to dismiss Shinhan's counterclaims.[33]

## III. THE COURT GRANTED INJUNCTIONS AND MOTIONS TO COMPEL IN SHINHAN'S FAVOR

23. Having not reached a settlement, the stay terminated on March 27, 2026. On April 2, 2026, the Court held a pre-motion conference related to Shinhan's motion to compel information about its collateral and separate motion by order to show cause ("**OSC**") for a preliminary injunction for the turnover of the collateral based on Shinhan's concerns that RIA had transferred and/or depleted the collateral.[34] On April 9, 2026, following an off-the-record pre-motion conference, the New York State Court granted Shinhan leave to file its motion for an OSC and motion to compel.[35] The same day, the New York State Court entered an Amended Preliminary Conference Order setting updated discovery deadlines, including completion of all document productions by May 15, 2026, party depositions by July 15, 2026, expert disclosures by August 12, 2026, and a trial readiness conference for October 15, 2026.[36]

24. On April 13, 2026, Shinhan filed a motion to compel production of discovery related to its collateral.[37] On April 20, 2026, Shinhan filed its OSC.[38]

25. In opposition, RIA made blatant misrepresentations and omitted critical information from both Shinhan and the New York State Court concerning the location and value of the Shinhan Securities. Among other things, RIA asserted that Shinhan "ha[d] offered no

---

[33] *See* Ex. 13 (Feb. 25, 2026 Status Conference Tr.) at 10:3–8.

[34] Ex. 18 (Shinhan Ltr. Requesting Pre-Mot. Conference re OSC).

[35] Ex. 19 (Apr. 9, 2026 Court Notice).

[36] Ex. 20 (Am. Prelim. Conf. Order).

[37] *See* Ex. 21 (Shinhan Mem. ISO Mot. to Compel).

[38] *See* Ex. 22 (Shinhan Mem. ISO Mot. for OSC).

evidence that RIA has dissipated or depleted any collateral such that it would not be entirely recoverable at a later time," and that Shinhan's "claims of dissipation rest on speculation, not evidence" – all while knowing Shinhan's concerns were well founded.[39] RIA repeatedly assured the New York State Court that the Shinhan Securities were safe, remained at 110% value, and were being held exclusively for Shinhan's benefit.[40]

26. On May 12, 2026, the New York State Court held a hearing on both motions. It was during this hearing that the New York State Court and Shinhan first learned that RIA had transferred the Shinhan Securities out of the designated custodial accounts at BNP—a fact that no one other than RIA had known because RIA had not provided a single daily collateral report for over a year.[41] The Court specifically asked about the value of the collateral and RIA's counsel stated that, according to representations made by its client (which were not independently verified), the collateral had not been depleted from the $204 million last reported.[42]

27. The New York State Court granted Shinhan's motion to compel in its entirety, ordering production within two weeks of, among other things, daily valuation data for the Shinhan Securities from May 1, 2025, forward (the "**May 12 Order**").[43] The New York State Court also ordered additional briefing on Shinhan's motion for injunctive relief in light of RIA's previously undisclosed transfers and continued that motion. At the hearing, the New York State Court admonished RIA's "lack of transparency" and expressed "very serious concerns about what is

39 Ex. 23 (RIA Opp. to Shinhan Mot. for OSC) at 2, 13–14.

40 *See id.*

41 *See* Ex. 16 (May 12, 2026 Hr'g Tr.) at 16:6–23, 18:4–7, 29:4–11.

42 *See* Ex. 16 (May 12, 2026 Hr'g Tr.) at 26:5–29:16 (RIA's counsel representing that the collateral "ha[d] not [been] dissipated," based solely on what he had "been told by [his] client," and acknowledging he had "not seen . . . independent" verification of that representation).

43 *See* Ex. 24 (Decision and Order on Mot. to Compel).

going on behind the scenes."[44]

28. RIA failed to fully comply with the New York State Court's May 12 Order. By May 26, 2026, RIA did not produce daily collateral reports, account statements, or information sufficient to identify what had happened to the Shinhan Securities within the two-week deadline the Court had set.[45] Instead, RIA produced approximately 300 documents, which mainly consisted of daily collateral reports from before May 2025, which Shinhan already had. Because of these deficiencies, on May 28, 2026, Shinhan filed a letter requesting a pre-motion conference on a motion for sanctions, and the New York State Court agreed to hear the matter at a hearing scheduled for June 3, 2026.

29. On June 1, 2026, the parties submitted their additional briefing on Shinhan's motion for injunctive relief. In that additional briefing, RIA represented to the New York State Court—through sworn affirmations of its CEO, David Kang, and Timothy Torline of Ducenta Squared Asset Management—that the Shinhan Securities had a market value of $198,591,177 as of April 30, 2026.[46] While acknowledging they had been moved out of BNP and to a new custodian, RIA further represented that the Shinhan Securities had not been dissipated or transferred to third parties;[47] that they had not been commingled with any other party's assets;[48] and that "[t]he [Shinhan Securities] are all RIA's assets, held as collateral for Shinhan pursuant to the GMSLA and SLA."[49] RIA also represented that, if Shinhan ultimately prevailed at trial, it could recover the Shinhan Securities or their monetary value through a money judgment enforceable against RIA

---

44 *See* Ex. 16 (May 12, 2026 Hr'g Tr.) at 55:24–56:04.

45 Ex. 25 (Shinhan Mem. ISO Mot. for Sanctions) at 12–14.

46 Ex. 26 (RIA Supp. OSC Opp.) at 6; *see also* Ex. 27 (Aff. of T. Torline) ¶ 19; Ex. 28 (Aff. of D. Kang) ¶ 38.

47 *See* Ex. 26 (RIA Supp. OSC Opp.) at 2.

48 *See* Ex. 28 (Aff. of D. Kang) ¶¶ 42–43

49 Ex. 26 (RIA Supp. OSC Opp.) at 6 n.10; *see also* Ex. 28 (Aff. of D. Kang) ¶¶ 42–43.

as a solvent, U.S.-based counterparty.[50] RIA's counsel separately confirmed in writing to Shinhan's counsel "that there is no title, liens, or rights by any other party to the current collateral."[51]

30. On June 3, 2026, after the additional briefing was filed by both Shinhan and RIA, the New York State Court held a continued hearing on Shinhan's motion for injunctive relief and addressed the discovery issues related to the May 12 Order. At the outset of the hearing, the Court proposed that, rather than proceed directly to a ruling, the parties attempt to negotiate a stipulated resolution to the pending motion.[52] The Court made its own resources available to facilitate those negotiations, directing its court attorney to conference with the parties off the record to work toward a stipulation.[53] After the off-the-record session, the Court scheduled a remote follow-up conference with the court attorney for June 12, 2026, to report on the status of negotiations, and set a continued in-person preliminary injunction hearing for June 17, 2026.[54] RIA also agreed to continue to make rolling productions of documents responsive to the May 12 Order.

31. On June 18, 2026, based on the parties' inability to reach a final resolution on the various issues related to the injunction motion and the value and security of the Shinhan Securities, the New York State Court granted in part Shinhan's motion for injunctive relief.[55] In lieu of immediate turnover of the Shinhan Securities, and without knowledge that the value RIA attributed to the collateral was illusory and that RIA was insolvent, the New York State Court directed RIA to, among other things, (i) engage Houlihan Lokey to value the Shinhan Securities, (ii) provide

---

[50] Ex. 26 (RIA Supp. OSC Opp.) at 12.

[51] Ex. 28 (Aff. of D. Kang) ¶ 42; Ex. 29 (Counsel Email Correspondence, dated June 16, 2026).

[52] *See* Ex. 30 (June 3, 2026 Hr'g Tr.) at 2:14–3:11.

[53] *See id.* at 17:2–11.

[54] *See id.* at 17:12–18:6; *see also* Ex. 31 (June 3, 2026 Court Notice); Ex. 32 (June 12, 2026 Court Notice).

[55] *See* Ex. 1 (Decision and Order on Mot. for OSC).

daily collateral reporting, (iii) report any purchase or sale of Shinhan Securities within two calendar days, (iv) submit a joint letter to WSFS informing it of Shinhan's rights under the Agreements, (v) pay outstanding borrowing rate and coupon payments to Shinhan (either in a U.S. account or escrow account with or without the Court) and (vi) resume borrowing-rate and coupon payments to Shinhan moving forward (the "**June 18 Order**").[56] The New York State Court further directed the parties to submit a stipulation addressing the Houlihan Lokey engagement, the mechanics of RIA's payment obligations, and any other outstanding implementation issues, to be so-ordered by the Court by July 8, 2026.[57]

32. Also on June 17, the New York State Court granted Shinhan leave to file a motion for sanctions based on RIA's willful noncompliance with the May 12 Order and its pattern of misrepresentation.[58] RIA continued to refuse to produce bank account statements. RIA's counsel—Quinn Emanuel Urquhart & Sullivan LLP and Winston Taylor LLP—each filed motions to withdraw on June 30, 2026 (the "**Withdrawal Motions**"). Shinhan filed a motion for sanctions on July 1, 2026 (the "**Motion for Sanctions**"), seeking (i) adverse inferences with respect to RIA's maintenance of the collateral it held for Shinhan's benefit, (ii) preclusion of RIA from offering any evidence or argument based on information it failed to produce in accordance with the motion to compel, and (iii) an award of Shinhan's reasonable attorneys' fees and costs.[59] RIA's opposition was due on or before July 28, 2026.[60]

33. After the court deadline and the June 3, 2026 hearing, RIA produced highly concerning documents for the first time to Shinhan. Among other things, Shinhan learned that

---

[56] *See* Ex. 2 (June 17, 2026 Hr'g Tr.) at 36:9–38:25.

[57] *See id.* at 39:3–6.

[58] *See* Ex. 33 (Shinhan Ltr. re Mot. for Sanctions); Ex. 34 (June 17, 2026 Court Notice).

[59] *See* Ex. 25 (Shinhan Mem. ISO Mot. for Sanctions) at 1, 14–23.

[60] *See* N.Y. C.P.L.R. 2214(b).

RIA had no valuations or appraisals supporting its sworn representations that the Shinhan Securities totaled approximately $198 million.[61] In fact, RIA had sold the majority of the $204 million of liquid, marketable securities constituting the Shinhan Securities (all but approximately $58.7 million of securities) and replaced it with illiquid bespoke investments without any discernible value.[62] RIA also produced materials revealing that, as of December 31, 2023, its auditor, Grant Thornton, had confirmed that RIA could not return the lent securities or collateral, or satisfy a judgment against it, without liquidating.[63]

## IV. RIA FILED FOR BANKRUPTCY

34. As a consequence of the Withdrawal Motions, Shinhan was left with no counterparty with which to negotiate the Court-ordered stipulation concerning the Shinhan Securities that had been due on July 8, 2026, and the New York State Court adjourned that deadline *sine die*.[64]

35. On July 10, 2026, Shinhan wrote to the New York State Court advising of further concerning developments: RIA had still not provided all the documents the Court had directed in either the May 12 Order or the June 18 Order, and the daily reports generated by Ducenta revealed that RIA had withdrawn more than $1.2 million in cash from the WSFS account and BNP account between July 2 and July 8, 2026, in violation of the Court order and its representations to the Court.[65] On July 14, 2026, Shinhan filed a partial opposition to the Withdrawal Motions,

---

[61] Ex. 25 (Shinhan Mem. ISO Mot. for Sanctions) at 3, 10, 13–14.

[62] As Shinhan's counsel has represented to the Court, these "bespoke assets" are largely valueless litigation claims. One appears to be a note secured by a deed of trust on what may be Mr. Kang's personal residence. *See* Ex. 35 (Aug. 28, 2026 Hr'g Tr.) at 19:2–10 (describing the bespoke collateral as including "valueless litigation claims" and "apparently, a lien on what appears to be Mr. Kang's home, or a promissory note of what appears to be Mr. Kang's personal ledger").

[63] *See* Ex. 36 (Grant Thornton Audit Presentation); Ex. 37 (RIA-Grant Thornton Correspondence).

[64] *See* Ex. 38 (So-Ordered Ltr. Correspondence, dated July 7, 2026).

[65] *See* Ex. 39 (Shinhan Ltr. re Collateral at WSFS, dated July 10, 2026).

requesting that the New York State Court require RIA to retain replacement counsel within thirty days (absent which its claims should be dismissed), and impose interim protections over the collateral consistent with the June 18 Order.[66] In its opposition, Shinhan disclosed to the Court the withdrawal of $1.2 million of the Shinhan Securities since the Withdrawal Motions were filed in violation of the New York State Court's June 18 Order.[67]

36. RIA confirmed on July 10, 2026, that it would be "withdrawing its deposition notices" for the depositions scheduled for July 13–14, 2026; depositions that were ordered to be completed by July 15, 2026, despite RIA's requests for an extension of the deadline.[68]

37. On July 15, 2026—the deadline set to complete depositions, and while Shinhan's Motion for Sanctions remained pending—RIA filed the Chapter 11 petition commencing this case (the "**Chapter 11 Case**").[69] Two days later, the New York State Court conditionally granted the Withdrawal Motions, noting the "unusual posture and circumstances" of the case—including Quinn Emanuel's disclosure that RIA had directed Quinn Emanuel to withdraw on June 29, 2026.[70] The New York State Court warned RIA that if it did not retain replacement counsel by October 15, 2026, its claims would be "deemed abandoned and therefore dismissed" pursuant to CPLR § 3216, and reserved decision on any stay of the State Court Action pending notification of the bankruptcy filing.[71]

38. On July 22, 2026, the New York State Court stayed the State Court Action.[72]

---

[66] *See* Ex. 40 (Shinhan Partial Opp. to Withdrawal Mots.) at 1–5.

[67] *See id*. at 1, 3–4.

[68] *See* Ex. 41 (July 10, 2026 email from J. Bauchner); Ex. 20 (Am. Prelim. Conf. Order).

[69] *See* Main Case Dkt. No. 1.

[70] *See* Ex. 42 (July 17, 2026 Decision and Order on Withdrawal Mots.) at 2.

[71] *See id.*

[72] *See* Ex. 43 (July 22, 2026 Decision and Order on Mots.).

## V. SUMMARY OF STATE COURT PROCEEDING

39. The New York Court proceedings are significantly advanced. Over the course of the State Court Action, the New York State Court has issued at least 17 orders addressing, among other things, discovery disputes, motions to dismiss, injunctive relief, and case management; and between April 9, 2026 and July 17, 2026 the parties appeared in front of the New York State Court five times.[73]

## VI. RIA'S BANKRUPTCY SCHEDULES CONFIRM THIS IS A TWO-PARTY DISPUTE

40. RIA's own bankruptcy filings confirm that its Chapter 11 Case, in substance, is a vehicle for prosecuting RIA's disputed claims against Shinhan. RIA's Schedules of Assets and Liabilities list total assets of approximately $679.4 million and total liabilities of approximately $199.1 million.[74] Of that $679.4 million in assets, approximately $530 million—roughly 78%—consists of RIA's litigation claims against Shinhan in the State Court Action, claims RIA itself acknowledges are "disputed, contingent, and unliquidated."[75] The balance of assets with any known value represents either (i) accounts holding the borrowing rate and coupon rate payments, or (ii) assets that RIA's daily collateral report identify as Shinhan's collateral. Shinhan's disputed claim of $185 million constitutes approximately 97.7% of RIA's total nonpriority unsecured claims and 93% of all claims.[76] RIA's remaining creditors—principally American Express and JPMorgan Chase—hold combined claims of less than $30,000.[77] RIA lists only three employees, each an insider asserting a claim against the estate.[78]

---

[73] *See* Docket, *Ria R Squared, Inc. v. Shinhan Sec. Co., Ltd.*, Index No. 659538/2024 (N.Y. Sup. Ct.).

[74] Main Case Dkt. No. 1 at 8.

[75] Main Case Dkt. No. 13 at 3–4.

[76] Main Case Dkt. No. 1 at 7; Main Case Dkt. No. 6 at 13; Main Case Dkt. No. 13 at 3–4.

[77] Main Case Dkt. No. 6 at 12–13.

[78] Main Case Dkt. No. 6 at 14, 25.

41. Moreover, RIA's Schedules show that RIA has no conventional business operations requiring Chapter 11 protection: it has no third-party customers, no accounts receivable, no intellectual property, and no revenue sources independent of the disputed Shinhan Securities.[79] It is a shell holding what remains of Shinhan's assets.

42. On July 30, 2026, Shinhan moved to dismiss the Chapter 11 Case under 11 U.S.C. §§ 1112(b) and 305(a), or, in the alternative, for relief from the automatic stay, on the grounds that the case was filed in bad faith to obtain a tactical advantage in the State Court Action and lacks any legitimate reorganizational purpose.[80] RIA filed its opposition on August 7, 2026,[81] and Shinhan filed its reply on August 12, 2026.[82] That motion remains pending.

## VII. The Notice of Removal

43. On August 7, 2026, RIA filed a notice of removal (the "**Notice of Removal**")[83] of the State Court Action in the United States District Court for the Southern District of New York (the "**New York District Court**"), administered under Case No. 26-cv-6748.[84]

44. On August 11, 2026, RIA filed in the New York District Court the *Motion to Transfer Venue* (the "**Transfer Motion**") to this Court.[85]

45. On August 21, 2026, Shinhan filed the *Shinhan Securities Co., Ltd.'s Statement Pursuant to Federal Rule of Bankruptcy Procedure 9027(e)(3)* stating, among other things, its non-consent to the entry of final orders or judgment by the bankruptcy judge and reserving all

---

[79] *See* Main Case Dkt. No. 6 (Schedules) at 2–7.

[80] Main Case Dkt. No. 20.

[81] Main Case Dkt. No. 41.

[82] Main Case Dkt. No. 44.

[83] References to filings in the New York District Court are cited as "S.D.N.Y. Dkt. No. __."

[84] Ex. 44 (Notice of Removal) [S.D.N.Y. Dkt No. 1].

[85] Ex. 45 [S.D.N.Y. Dkt. No. 3].

rights and remedies with respect to the Notice of Removal.[86]

46. On August 27, 2026, Shinhan took no position with respect to the Transfer Motion in *Defendant's Response to Plaintiff's Motion to Transfer Venue* and reserved any and all rights, claims, defenses, and arguments, including with respect to remand and subject-matter jurisdiction.[87]

47. On August 28, 2026, the New York District Court entered the *Order Granting Motion to Transfer Venue*, transferring the New York District Court proceeding to this Court.[88]

**ARGUMENT**

48. Courts in the Southern District of Florida generally apply a three-staged inquiry to a motion to remand a proceeding removed under 28 U.S.C. § 1452(a): (1) whether bankruptcy jurisdiction exists under 28 U.S.C. § 1334; (2) if jurisdiction exists, whether mandatory abstention requires remand under 28 U.S.C. § 1334(c)(2); and (3) if mandatory abstention does not apply, whether permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452(b) nonetheless favors returning the action to state court. *See, e.g.*, *Benitez v. Jarrette Bay Invs. Corp. (In re Nassau Dev. of Vill. W. Corp.)*, 547 B.R. 857, 860–62 (Bankr. S.D. Fla. 2016); *Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 261 (Bankr. S.D. Fla. 2010); *E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC)*, 284 B.R. 162, 168 (Bankr. S.D. Fla. 2002). The court performs a gatekeeper function: it must first determine whether jurisdiction exists, and then whether that jurisdiction must or should be exercised. *Lennar Corp.*, 430 B.R. at 261.

[86] Ex. 46 [S.D.N.Y. Dkt. No. 10].
[87] Ex. 47 [S.D.N.Y. Dkt. No. 11].
[88] Ex. 48 [S.D.N.Y. Dkt. No. 12].

## I. SUBJECT-MATTER JURISDICTION DOES NOT EXIST OVER THE STATE COURT ACTION

49. A notice of removal does not confer automatic jurisdiction over the underlying action. Section 1452 permits removal only if the court "has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); *E.S. Bankest*, 284 B.R. at 168. 28 U.S.C. § 1334(b) grants jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11." *Id.* If neither "arising under" or "arising in" (aka "core") nor related-to (aka "non-core") jurisdiction exists, the removed action cannot remain in federal court and must be remanded on jurisdictional grounds. *See Mukamal v. Ofer*, No. 24-cv-22803, 2024 U.S. Dist. LEXIS 151517, at *5 (S.D. Fla. Aug. 23, 2024) ("once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue" (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999))).

50. RIA bears the burden of establishing, by a preponderance of the evidence, that 28 U.S.C. § 1334 jurisdiction exists. *See Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001) (the party seeking removal "ha[s] the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence"); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) ("the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction"). Any doubt is resolved against removal. *See E.S. Bankest*, 284 B.R. at 168 ("The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear." (citing B*urns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994))).

### A. Core Jurisdiction Does Not Exist Over the State Court Action

51. A proceeding is core if it arises under Title 11 or arises in a case under Title 11. *See* 28 U.S.C. §§ 1334(b), 157(b). The list of core proceedings includes, for example, obtaining credit,

confirming a plan, turnover of estate property, dischargeability of particular debts, validity of liens, and use of cash collateral. *Id.* § 157(b)(2).

52. The State Court Action—a state-court breach of contract, conversion, and fraud dispute governed by New York law—does not fit into any category listed in Section 157(b). It is plainly non-core: it does not raise any substantive provision of the Bankruptcy Code and does not arise in RIA's bankruptcy case. *See Wortley v. Bakst*, 844 F.3d 1313, 1319-20 (11th Cir. 2017) (state-law fraud and conspiracy claims are not core proceedings because they "are not created by the Bankruptcy Code and are not particular to federal bankruptcy law," collecting cases holding state-law fraud and tort claims non-core); *see also Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348-49 (11th Cir. 1999) (state-law contract dispute is non-core because it did not invoke a substantive bankruptcy-created right and "could clearly occur outside of bankruptcy").

53. RIA appears to not contest this notion. In its Notice of Removal, RIA frames the State Court Action as concerning a $750 million loan agreement and fraudulent inducement claim, and that "at least 'related-to'" jurisdiction exists.[89] It does not argue that "core" or "arising-in" jurisdiction exists.[90] Accordingly, this Court lacks "arising in" or "arising under" or "core" jurisdiction over the State Court Action.

**B. Related-to Jurisdiction Does Not Exist Over the State Court Action**

54. The test for "related to" jurisdiction is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc.*

---

[89] Ex. 44 (Notice of Removal) [S.D.N.Y. Dkt. No. 1] at ¶ 6.

[90] *Id.*

*v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also In re Nassau*, 547 B.R. at 860 ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." (citing *Cmty. Bank of Homestead v. Boone (In re Boone)*, 52 F.3d 958, 960 (11th Cir. 1995))). But "[a] proceeding 'related to' a case under title 11 is the kind of proceeding with the most tenuous federal jurisdictional basis." *In re Nassau*, 547 B.R. at 860.

55. The broad interpretation of "related to" jurisdiction is not without limit: "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of" 28 U.S.C. § 1334(b), because "[j]udicial economy itself does not justify federal jurisdiction." *Pacor*, 743 F.2d at 994. Courts applying this test have found related-to jurisdiction lacking, and remanded, where—as here—the removed action would not conceivably affect the debtor's assets, liabilities, or the administration of the estate. *See In re Nassau*, 547 B.R. at 860-61 (remanding removed commercial foreclosure action for lack of related-to jurisdiction because "nothing in the [removed action] would impact the administration and handling of the Debtor's estate," notwithstanding the broad *Pacor/Lemco Gypsum* test); *Horizons A Far, LLC v. Buono (In re Soderstrom)*, No. 6:12-CV-1205-ORL-37, 2013 WL 24205, at *1, *2 n.1, *4 (M.D. Fla. Jan. 2, 2013) (affirming dismissal of state law fraud claims for lack of related-to jurisdiction where the claims did not "stem from the bankruptcy itself" and any effect on the estate was "attenuated and speculative").

56. RIA's Notice of Removal asserts that adjudicating the breach of contract and tort claims in the State Court Action "may materially affect creditor recoveries, plan formation, liquidity, and the administration of the estate."[91] RIA cannot simply assume its way into related-

[91] Ex. 44 (Notice of Removal) [S.D.N.Y. Dkt. No. 1] at ¶ 4.

to jurisdiction on that premise.[92]

57. The Shinhan Securities that make up the core of the parties' dispute are not estate property—meaning that their value cannot benefit or affect the estate in any way. As an initial matter, RIA transferred full legal title to the collateral to Shinhan under Sections 2.3, 4.2(c), and 14(c) of the GMSLA.[93] Shinhan further exercised an irrevocable power of attorney over the Shinhan Securities in October 2024—nearly one year ago. RIA's CEO swore to the New York State Court, under penalty of perjury, that the Shinhan Securities are "held as collateral for Shinhan pursuant to the GMSLA and SLA," and RIA's counsel confirmed in writing that there is "no title, liens, or rights by any other party to the current collateral." [94] RIA cannot now recast the same collateral as property of the estate simply because it has filed Chapter 11 and needs a jurisdictional hook to bring the State Court Action here.

58. RIA further admits to having (fraudulently) transferred the Shinhan Securities out of the Debtor's estate to non-Debtor, Ducenta 80-20 Fund, LP. RIA's CEO further confirmed that the Shinhan Securities constitute the only liquid assets available to RIA, testifying that of RIA's approximately $606 million in scheduled "all other assets," only "$50 to $60 million" is "flexible, liquid, or reasonably capable of being reduced to cash in the near term," and that those liquid assets

---

[92] In its Notice of Removal, RIA cites to *Cuyahoga*, for the proposition that "related-to" jurisdiction is appropriate where the outcome could alter the estate's assets, liabilities, creditor distributions, and ability to reorganize. [Ex. 44 (Notice of Removal) ¶ 6]. *Cuyahoga* is an out-of-circuit case that does not even address removal. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). In *Cuyahoga*, the Second Circuit found that 28 U.S.C. § 1334(b) jurisdiction was proper because the underlying action being appealed involved approval of a settlement that "settled" §§ 502 and 506 allocation of claims between "a party asserting the status of constructive trustee and a first priority secured creditor." *Id.* at 114. Those issues made the action "core" and the court found supplemental jurisdiction over the ancillary environmental liability claims. *Id.* This case is clearly distinguishable, because the State Court Action has no core claims or issues. The State Court Action is a two-party contract, conversion, and fraud dispute over collateral that RIA has already conceded belongs to Shinhan; its resolution will determine the rights of RIA and Shinhan inter se under New York law, not resolve any bankruptcy-specific claims-allowance or asset-distribution question that would otherwise require this Court's involvement.

[93] *See supra* ¶ 13.

[94] *See supra* ¶ 29.

are the securities that were transferred to Ducenta 80-20 Fund, LP (i.e., the Shinhan Securities) with "the rest" being "contingent litigation claims."[95] Because the Shinhan Securities are at the center of the State Court Action, and are admittedly not property of the estate, related-to jurisdiction cannot rest on their value having an effect on the administration of the estate. Even if the Shinhan Securities are property of the estate (they are not), RIA acknowledges that the value thereunder inures to the exclusive benefit of Shinhan. Indeed, RIA has no assets of known value that are not expressly identified as Shinhan's collateral or money held in WSFS accounts and owed to Shinhan by Court order.

59. Related-to jurisdiction does not exist, and this Court should remand the State Court Action to the New York State Court on that basis alone.

## II. MANDATORY ABSTENTION UNDER 28 U.S.C. § 1334(C)(2) INDEPENDENTLY REQUIRES REMAND

60. Even if this Court were to find "related to" jurisdiction, it must abstain from hearing the State Court Action if (1) there is no independent basis for federal jurisdiction other than 28 U.S.C. § 1334(b); (2) the claims are related to a case under title 11 but do not arise under or arise in a case under title 11 (i.e., the proceeding is non-core); (3) the action was commenced in state court; and (4) the action can be timely adjudicated in state court. *See, e.g.*, *Lennar Corp.*, 430 B.R. at 262; *Carver v. Carver*, 954 F.2d 1573, 1579 n.10 (11th Cir. 1992); *E.S. Bankest*, 284 B.R. at 171. The party requesting abstention bears the burden of proving each element by a preponderance of the evidence. *Redstone Advance, Inc. v. Big Daddy Guns, Inc. (In re Big Daddy Guns, Inc.)*, 651 B.R. 817, 826 (Bankr. N.D. Fla. 2023). All four elements for mandatory abstention are satisfied here.

95 *See* Ex. 49 (Transcript of Aug. 24, 2026 Meeting of Creditors) at 36:16–37:13.

### A. There Is No Independent Jurisdictional Basis Over the State Court Action

61. Shinhan disputes that jurisdiction is proper at all, but at most, jurisdiction here rests solely on 28 U.S.C. § 1334(b); there is no separate diversity or federal-question basis for the State Court Action to remain in federal court.

### B. Non-Core, Related-To Claims

62. RIA does not allege this is a core-proceeding, having represented in its Notice of Removal that the action is at least "related to" the Chapter 11 Case.[96] The claims do not arise under or arise in the bankruptcy case; they are not amongst the core proceedings listed in 28 U.S.C. § 157(b); and they raise no substantive Bankruptcy Code issues.

### C. Commenced in State Court

63. RIA commenced the State Court Action on December 9, 2024—well before RIA's July 15, 2026 petition date. The case had been ongoing for nearly two years as of the date of the filing and was poised for case-dispositive rulings.

### D. Timely Adjudication Favors the New York State Court

64. Timely adjudication is measured by whether continued state-court litigation would adversely affect administration of the bankruptcy case. *See E.S. Bankest*, 284 B.R. at 174-75. Relevant factors include:

> (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the bankruptcy case; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case.

*Id.* at 175 (citing *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 778-79 (B.A.P. 10th

---

[96] Ex. 44 (Notice of Removal) [S.D.N.Y. Dkt. No. 1] at ¶ 6 ("This Court has original but nonexclusive jurisdiction under 28 U.S.C. § 1334(b) because the action is at least 'related to' the Chapter 11 Case.").

Cir. 1997)).

65. Each of the seven factors confirms that the New York State Court, not this Court, can and should timely adjudicate the State Court Action.

66. *First*, the New York State Court has already invested substantially in this matter for nearly two years, issuing at least seventeen orders, holding five court hearings in the three months before the Chapter 11 Case was filed, and setting an operative scheduling order, which, until stayed by the Chapter 11 Case, included a trial-readiness conference in October 2026.

67. *Second*, the State Court Action was far advanced: the parties had produced over 45,000 documents, party depositions had been ordered completed by July 15, 2026, expert disclosures were due August 12, 2026, and a trial readiness conference was set for October 15, 2026.

68. *Third*, the Chapter 11 Case remains in its earliest stages—no plan has been filed, and the Motion to Dismiss remains pending. Nothing about the posture of the Chapter 11 Case requires this Court to retain the State Court Action.

69. *Fourth*, the State Court Action turns entirely on New York contract, conversion, and fraud law governing the GMSLA and SLA, issues the New York State Court has already analyzed at length. There is no bankruptcy-specific complexity that would counsel in favor of this Court's adjudication.

70. *Fifth*, Shinhan has expressly declined to consent to this Court entering final orders or judgment on these non-core claims.[97] Absent consent, this Court could, at most, submit proposed findings of fact and conclusions of law for *de novo* review by the district court, which requires an independent review of the record—and potentially hold its own trial—before any final,

---

[97] *See supra* ¶ 45.

appealable judgment could issue. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(c). The New York State Court is not subject to this two-tiered process and can proceed directly to a final, appealable judgment, making it the faster and more efficient forum for the parties.

71. *Sixth*, under the New York Consolidated Laws, Civil Practice Law and Rules § 4102(a), the right to jury trial remains available and has not been waived because no note of issue has yet been filed. This Court cannot offer the parties a jury trial.

72. *Seventh*, RIA's Chapter 11 Case is nominally a reorganization, but RIA's own Schedules and Mr. Kang's sworn 341 testimony confirm that RIA has no legitimate business operations and no revenue independent of the Shinhan Securities. RIA consists overwhelmingly of contingent litigation claims against Shinhan—confirming that this is, in substance, a vehicle to relitigate the State Court Action.[98]

73. Every factor favors remanding this matter back to the New York State Court. At the time of removal, the State Court Action had been pending for approximately nineteen months; fact discovery was substantially complete; a sanctions motion was pending; party depositions had been ordered completed by July 15, 2026; expert disclosures were due August 12, 2026; and a trial readiness conference was set for October 15, 2026. This advanced posture confirms that the New York State Court can adjudicate the matter without delay, and that the New York State Court's continued oversight over the case would not prolong or hinder administration of RIA's estate. The State Court Action is at least as advanced as the state action remanded in *Lennar*, where mandatory abstention was required after the state action had been pending seventeen months, the state court had issued more than twenty orders, held at least ten substantive discovery hearings and multiple case-management conferences, set a three-week jury trial, and scheduled an evidentiary hearing

[98] RIA further has a pending litigation against DW Partners for the recovery of assets it alleges is Shinhan's collateral.

on a sanctions and default-judgment motion. *Lennar Corp.*, 430 B.R. at 258-66.

74. Because each mandatory abstention element is satisfied, this Court should hold that mandatory abstention independently requires remand of the State Court Action.

## III. PERMISSIVE ABSTENTION UNDER 28 U.S.C. § 1334(C)(1) AND EQUITABLE REMAND UNDER 28 U.S.C. § 1452(B) INDEPENDENTLY FAVOR RETURNING THIS ACTION TO STATE COURT

75. Under 28 U.S.C. § 1334(c)(1), this Court has broad discretion to abstain in the interest of justice, comity with state courts, or respect for state law. *DRO 15R LLC v. Marina Plaza, S.A. (In re DRO 15R LLC)*, 642 B.R. 341, 342 (Bankr. S.D. Fla. 2022). Under § 1452(b), this Court may remand on any equitable ground, a standard courts in this District treat as equally broad. *Hayim v. Goetz (In re SOL, LLC)*, 419 B.R. 498, 510 (Bankr. S.D. Fla. 2009) ("The criteria for either permissive abstention or [equitable] remand under 28 U.S.C. § 1452(b) are virtually identical."). The courts will rely on the factual record supporting each relevant factor. *See Fine Food Factory, Inc. v. Facilitrace LLC*, No. 0:24-cv-61191, 2024 U.S. Dist. LEXIS 198932 (S.D. Fla. Oct. 31, 2024).

76. Courts apply a fourteen-factor framework:

> (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action.

*Lennar Corp.*, 430 B.R. at 267.

77. Every material factor favors remand here.[99]

78. *Forum shopping and the timing of the petition.* The timing of RIA's Chapter 11 filing independently supports remand. RIA has all but admitted the filing of this Chapter 11 Case was an act of forum shopping. On May 12, 2026, the New York State Court granted Shinhan's motion to compel and ordered further briefing on injunctive relief; on June 17, 2026, it granted leave for Shinhan to file the Sanctions Motion, which Shinhan filed on July 1; RIA's opposition to the Sanctions Motion, if any, was due July 28, 2026; the operative preliminary conference order required depositions to close July 15, 2026, expert disclosures by August 12, and set a trial readiness conference for October 15. RIA's counsel withdrew on June 30, 2026, RIA canceled scheduled depositions, and it filed for Chapter 11 on July 15, 2026, the very day depositions were to be completed. RIA failed to comply with the Court's order to pay the sums owed to Shinhan and which are currently held in the WSFS Escrow Account and Reserve Account totaling over $6.5 million and to make all payments moving forward.[100] After the Court's ruling on the OSC, Shinhan discovered RIA's blatant misrepresentations to the Court through RIA's delayed compelled discovery, and Shinhan further discovered RIA was insolvent and withdrew an additional $1.2 million in violation of the New York Court's order. These facts were raised to the Court for the first time in response to the Withdrawal Motions with a renewed request for an immediate turnover of collateral. RIA's first act in this bankruptcy was to file an adversary proceeding against Shinhan; an overt act of forum shopping. These circumstances support returning the action to the court whose orders and schedule the timing of the petition appears designed to avoid. *See Puritan Lace Mfg. Co. v. Perfect Home, L.L.C. (In re Perfect Home, L.L.C.)*,

[99] Of the fourteen factors identified above, factors 4, 5, 7, 9, and 14 are inapplicable here. As to factor 11, *see supra* ¶ 70 (no jury demand has been made in the State Court Action, and the right to do so remains available and unwaived).

[100] Main Case Dkt. No. 6 at 1.

231 B.R. 358, 362 (Bankr. N.D. Ala. 1999*)* (removal timed after an unfavorable state-court development is a hallmark of forum shopping).

79. *Bad faith.* RIA's Chapter 11 Case was independently filed in bad faith, which further supports abstention and equitable remand.[101] RIA clearly filed the Chapter 11 Case to stop the State Court Action from issuing adverse findings and to find a more favorable forum.[102] Courts are reluctant to reward such tactics: a debtor's manufacture of a bankruptcy hook to relitigate a two-party dispute in a friendlier forum is a hallmark of bad faith and forum shopping that weighs heavily in favor of abstention and equitable remand. *Cf. In re Outta Control Sportfishing, Inc.*, 642 B.R. 180, 185-86 (Bankr. S.D. Fla. 2022) (debtor filed Chapter 11 to escape a pending federal action and litigate a two-party dispute in a more favorable forum; courts are "loath to force" a creditor to litigate in the debtor's chosen forum instead of its own); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988) (petition filed on the eve of state-court proceedings to forestall a creditor's enforcement efforts evidences bad faith and forum shopping).

80. Since the filing of the Motion to Dismiss, additional evidence has come to light supporting that the Chapter 11 Case should be dismissed. For example, at the August 24, 2026 meeting of creditors held pursuant to 11 U.S.C. § 341, RIA's CEO, David Kang, testified under oath that RIA has had no lending counterparty other than Shinhan since approximately 2020.[103]

81. RIA also has no assets that are not owed to RIA. The WSFS accounts (totaling over $6.5 million) were ordered to be paid to Shinhan. And of RIA's approximately $679 million in scheduled assets, only $50 to $60 million consists of liquid assets—the rest being contingent

---

[101] *See Emergency Motion by Shinhan Securities Co., Ltd. to Dismiss or, Alternatively, for Relief from the Automatic Stay* [Main Case Dkt. No. 20] (the "**Motion to Dismiss**").

[102] Main Case Dkt. No. 44 ¶¶ 5–6.

[103] Ex. 49 (Transcript of Aug. 24, 2026 Meeting of Creditors) at 31:3–17.

litigation claims.[104] RIA's auditor confirmed that as of December 31, 2023, RIA could not continue as a going concern and uphold its contractual obligations to Shinhan.[105] Mr. Kang confirmed that RIA's financial condition had worsened every year since 2023.[106] The decision to file the Chapter 11 petition was made by the same three-person "executive committee" of insiders that controls all of RIA's business, investment, and litigation decisions,[107] and RIA first retained restructuring counsel at the end of May 2026—contemporaneously with Shinhan's motion for the turnover of the collateral and the revelation of RIA's collateral transfers and dissipation of $140 million of collateral value.[108]

82. *Comity with the New York State Court's docket management.* Comity strongly favors remand given the New York State Court's extensive investment in this litigation: it has presided over the case for approximately nineteen months, held multiple conferences, ruled on numerous motions, granted partial injunctive relief after extensive briefing, and was preparing resolution of a sanctions motion before removal intervened. *See Lennar Corp.*, 430 B.R. at 268 (comity favors discretionary remand "[g]iven all of the time and effort already expended by the State Court"); *Isa v. Johnson & Johnson*, No. 8:19-cv-1115-33JSS, 2019 U.S. Dist. LEXIS 115312, at *8 (M.D. Fla. July 11, 2019*)* ("comity counsels in favor of state-court resolution of state-law claims."). As in *Isa*, this is a case where Shinhan's claims are state law claims best decided by the court most familiar with the applicable law—here, New York contract, conversion, and fraud law that the New York State Court has applied to this dispute for nearly two years. *See id.*

---

[104] *Id.* at 37:2–17.

[105] *See* Ex. 36 (Grant Thornton Audit Presentation); Ex. 37 (RIA-Grant Thornton Correspondence).

[106] Ex. 49 (Transcript of Aug. 24, 2026 Meeting of Creditors) at 40:2–7.

[107] *Id.* at 34:10–16.

[108] *Id.* at 34:16.

83. *Predominance of state law.* The predominance of state law issues is one of the most compelling reasons for abstention. Every single issue in the State Court Action is governed by New York law turning on the interpretation of the GMSLA and SLA. No bankruptcy-specific expertise is required to resolve the breach of contract, conversion, and fraud claims brought in the State Court Action.

84. *Relatedness or remoteness to the bankruptcy case.* This factor is often the practical center of the analysis. *See Fine Food Factory*, 2024 U.S. Dist. LEXIS 198932, at *19-20 ("the primary inquiry is the degree of relatedness or remoteness of the proceedings to the main bankruptcy case" (internal quotation marks omitted)). The State Court Action is a breach of contract, conversion, and fraud dispute governed by New York law. That RIA's estate consists overwhelmingly of its litigation claims against Shinhan does not make the State Court Action itself a core bankruptcy matter; the New York State Court, not this Court, has presided over the substance of this dispute for nearly two years and has the strongest interest in resolving it, as there are no bankruptcy-related issues within the proceeding. RIA's attempts to forum shop at this late stage in the litigation should not be encouraged.

85. *Difficulty or unsettled nature of the applicable state law.* The State Court Action does not present any novel or unsettled question of New York law; to the contrary, it turns on the straightforward application of well-established New York contract principles—interpretation of the GMSLA and SLA, the effect of RIA's transfer of legal title to the Shinhan Securities, and garden-variety fraud and fraudulent-inducement standards—to a fully developed factual record that the New York State Court has already spent nearly two years developing. Because these are routine state-law issues rather than difficult or unsettled ones, there is no bankruptcy-specific reason for this Court to resolve them; the absence of any unsettled question further underscores

that the New York State Court can resolve the case efficiently and without need for guidance from this Court.

86. *Effect on efficient administration of the estate.* The core of the Chapter 11 Case is the two-party dispute between RIA and Shinhan—there are no material assets to administer outside RIA's contingent claims against Shinhan—which are unfounded and baseless. Outside this claim, RIA's only other asset is another litigation claim which is also part of the Shinhan's collateral package. RIA has no independent business operations outside of its business relationship with Shinhan. Therefore, administration of RIA's estate rises and falls entirely upon the adjudication of the parties' claims against one another and the New York Court is best suited to resolve this dispute.

87. *Feasibility of severing state-law claims.* The New York contract, conversion, and fraud claims are readily severable from the bankruptcy case; any judgment can be entered in state court, with enforcement, if needed, left to this Court.

88. *Presence of non-debtor parties; effectively a two-party dispute.* Shinhan's disputed claim of $185 million constitutes approximately 97.7% of RIA's total nonpriority unsecured claims and 93% of all claims, making this effectively a two-party dispute that the New York State Court—which has already invested nineteen months in the case—is best positioned to resolve. Because Shinhan's claim represents the overwhelming majority of RIA's disputed liabilities, and the underlying dispute can be fully adjudicated in the pending State Court Action, remand does not undermine any broader creditor-protection purpose of the bankruptcy case; there is no genuine multi-creditor administration at stake.

89. Taken together, these factors confirm that permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) independently support returning the

State Court Action to the New York State Court.

## CONCLUSION

90. For the reasons set forth above: (1) related-to jurisdiction does not exist under 28 U.S.C. § 1334, and, even if it were satisfied, (2) mandatory abstention under § 1334(c)(2) independently requires mandatory remand because every element—no independent jurisdictional basis, non-core status, commencement in state court, and timely adjudicability—is satisfied; and (3) even if it were not, permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) independently favor remand given the predominance of New York law, the comity owed to the New York State Court's extensive investment in this litigation, and the effect on efficient estate administration.

91. For the foregoing reasons, Shinhan respectfully requests that this Court enter an order (i) remanding the State Court Action, *Ria R Squared, Inc. v. Shinhan Securities Co., Ltd.*, Index No. 659538/2024, to the Supreme Court of the State of New York, County of New York, Commercial Division and (ii) granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL

92. Pursuant to this Court's Local Rule 9013-1, the undersigned counsel has attempted in good faith to confer with counsel to RIA in this case in an effort to seek a consensual resolution of the relief sought herein. As of the filing of this Motion, the parties had not yet been able to conduct that conference, and RIA's position on the relief sought is unknown.

[*Signature Page Follows*]

Respectfully submitted,

Dated: September 8, 2026
Miami, Florida

By: */s/ James N. Robinson*

**WHITE & CASE LLP**
James N. Robinson (FBN 608858)
Trudy Smith (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: 305-371-2700
Facsimile: 305-358-5744
Email: jrobinson@whitecase.com
trudy.smith@whitecase.com

-and-

Laura Garr (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200
Facsimile: 212-354-8113
Email: laura.garr@whitecase.com
andrew.zatz@whitecase.com

*Counsel for Shinhan Securities Co., Ltd.*